## In re WHITESIDE.

(District Court, N. D. Georgia. March 10, 1916.)

No. 466.

1. BANKRUPTCY ⬤⟲262(3)—LIENS—SALES FREE FROM LIENS.

Shortly before bankruptcy, a bank obtained judgment against the bankrupt on a note secured by a deed to land and claimed to be infected with usury. The referee, over the objection of the bank, ordered the sale of the land free from liens. The bank did not subject the question to the jurisdiction of the referee by intervention or formal proof of its claim as a secured debt, but desired a determination of the validity of its lien. The referee declined to determine the matter, on the ground that the validity of the claim could not be adjudicated by him, unless the bank filed proof of its secured debt or an intervention for that purpose. *Held,* that the action of the referee would be approved and the sale permitted, leaving the validity of the deed to be determined after the property was sold and the proceeds brought into the bankruptcy court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 365; Dec. Dig. ⬤⟲262(3).]

2. BANKRUPTCY ⬤⟲210—LIENS—DETERMINATION OF VALIDITY.

The question as to the validity of the security deed, because of its being infected with usury, could be determined in the bankruptcy court as well as elsewhere.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321–323; Dec. Dig. ⬤⟲210.]

In Bankruptcy. In the matter of James T. Whiteside, bankrupt. On review of rulings of the referee. Referee's action approved.

Jas. T. Sisk, of Elberton, Ga., for trustee.

W. D. Tutt, of Elberton, Ga., and Holden, Shackelford & Meadow, of Athens, Ga., for objectors.

NEWMAN, District Judge. This is an application by E. B. Tate, trustee in bankruptcy for James T. Whiteside, for leave to sell the

---

real estate free from liens and objections filed thereto by the Bank of Elberton. The two reports of the referee, upon which petition to review is filed, are as follows:

"I, Frank L. Upson, one of the referees of said court in bankruptcy, do hereby certify that in the course of the proceedings in said cause before me the following question arose pertinent to the said proceeding:

"Whether or not an order should be made granting leave to the trustee to sell a tract of 24.9 acres of land in Elbert county free of all liens, and particularly free of the security deed lien held by the Bank of Elberton, same to be divested from the property, and to attach to the proceeds of the sale, to such an amount, extent, and dignity as may . be by order of this court of bankruptcy fixed and determined, over the objections made by the bank, which alleged that the real estate in question was not worth more than its lien claim. The trustee denied the validity of the security deed held by the bank. An order was made by the referee overruling the bank's objections, and granting the trustee leave to sell the property free of liens.

### "Summary of Evidence.

"James T. Whiteside negotiated a loan through W. O. Jones, representing the Bank of Elberton, of which he was president, for $3,817.15, giving his note therefor and a security deed on a tract of land of 24$^9/_{10}$ acres, and paying an interest charge of 10 per cent. for the use of the money. This transaction took place in 1909, and thereafter the note was by Jones transferred to the Bank of Elberton and the renewal note was also infected with the usurious rate of 10 per cent. interest. In 1913 another security deed to the same tract of land was given to secure a note in which was embodied the back interest.

"Suit on this note, and the renewal note hereinbefore referred to, was brought by the bank, which suit was filed in the city court of Elberton on January 20, 1914, and a general judgment obtained thereon on May 11, 1914, for $5,543.35, principal, $538.90 interest on judgment, $608.22 attorney's fees, besides costs. In this suit no plea or defense was filed. The petition bringing suit on said note did not show, nor were there any pleadings in said suit showing, usury in said notes, nor did either of said notes show any usury on their face. Said judgment was for the full amount appearing on the face of said notes sued on to be due thereon.

"A voluntary petition in bankruptcy was filed by Whiteside on May 13, 1914, and he was adjudged a bankrupt on May 16, 1914, and on May 29, 1914, at first meeting of creditors, E. B. Tate was appointed trustee and duly qualified as such.

"By stipulation of counsel for trustee and for the bank it was agreed that James T. Whiteside testified at his examination (though the stenographer failed to report it so) that he was insolvent when the suit was brought against him, and when the judgment was obtained thereon, in the city court of Elberton.

"The land in question was in the actual and physical possession of the bankrupt when he filed his petition in bankruptcy, and was taken charge of by the trustee.

"The findings of fact made in my rulings on which the order was based are herewith incorporated as a part of this summary."

The "findings of fact" above referred to are as follows:

"I find that the debt was infected with usury when the money transaction was first made between Whiteside and Jones, to secure which a security deed was given, and that afterwards the renewal notes carried 10 per cent. interest, which was charged the bankrupt by the bank.

"I find that Whiteside was insolvent when the judgment was obtained against him by the bank in the city court of Elberton, and that same was obtained just a few days before his voluntary bankruptcy petition was filed on which he was adjudged a bankrupt. I find that the land in question was

in the bankrupt's possession and that same went into the possession of the trustee."

The second report of the referee is as follows:

"I, Frank L. Upson, one of the referees of said court of bankruptcy, do hereby certify that in the course of the proceedings in said cause before me the following question arose pertinent to the said proceedings:

"Whether or not the validity of the lien claimed by the Bank of Elberton on the 29.9 acres of land in question should have been passed upon by the referee, in view of the fact that no intervention or proof of secured debt had been filed by the bank for that purpose.

"As fully set forth in the certificate preceding, the bank filed objections to the allowance of trustee's petition for leave to sell the land in question free of its lien, and alleged that it made its appearance 'for the sole and only purpose of objecting to the sale of the real estate of said bankrupt, free of liens,' and by amendment filed it does not modify the limited appearance made by it, although insisting that it had a valid lien, and that the land was worth less than the amount of its lien claim.

"It is my understanding of the law that a referee cannot in a summary manner adjudicate the validity of a creditor's lien claim, unless that creditor files a proof of its secured debt, or an intervention, expressly for that purpose.

"It is held in the case of In re Henderson, 206 Fed. 139, 30 Am. B. R. 468, that the validity of the lien claim of a creditor could not be determined by a summary proceeding before a referee, although in this case the converse of the principle therein ruled is invoked, which is that the validity will not be determined for the bank, unless it files an intervention or a proof of its claim for that purpose. In the case cited the creditor objected to the determination of the validity, and in this case the bank desires it; but in neither case did the creditor subject the question to the jurisdiction of the referee's court by intervention or by formal proof of its claim as a secured debt.

"Said question is certified to the judge for his opinion thereon."

[1, 2] I have had considerable doubt about the proper direction to give this case, as it involves rather difficult legal questions. I have finally concluded, however, that the right thing for me to do is to approve the action of the referee, and let the trustee sell the lands; the question as to the validity of the lien of the bank to be heard in the bankruptcy court. The question of the validity of the security deed, because of its being infected with usury, can be there determined as well as elsewhere. To decide otherwise would be to decide the question now in favor of the Bank of Elberton, and I am not prepared to do that. I think, after the property is sold and the proceeds of the sale brought into the bankruptcy court, we can, after careful argument and consideration by the court, determine better what are the respective rights of the bank and the trustee in bankruptcy.

The action of the referee is approved.